IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: MICHAEL SCOTT CHANDLER | : | CIVIL ACTION |
| | : | |
| MICHAEL SCOTT CHANDLER | : | NO. 17-2164 |
| *Appellant/Defendant* | : | |
| | : | |
| v. | : | 15-387 |
| | : | |
| KEITH S. KIMMEL | : | |
| *Appellee/Plaintiff* | : | FILED SEP 12 2018 |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                        SEPTEMBER 12, 2018

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is an appeal filed by Appellant Michael Scott Chandler, ("Appellant") pursuant to 28 U.S.C. § 158(a), in which he contests the Orders issued by the Honorable Judge Jean K. FitzSimon, United States Bankruptcy Court for the Eastern District of Pennsylvania, (the "Bankruptcy Judge") which entered judgment in favor of Plaintiff/Appellee Keith S. Kimmel, ("Appellee"). The parties have submitted briefs in support of their respective positions. [ECF 4, 5, 6]. This matter is now ripe for disposition.

For the reasons set forth herein, Appellant's appeal is denied. Accordingly, the judgment of the Bankruptcy Court is affirmed.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

On November 25, 2014, Appellant filed a voluntary Chapter 7 Bankruptcy petition, docketed in 14-br-19346, which was assigned to the Bankruptcy Judge. On September 3, 2015,

---

[1] These facts, which are mostly undisputed, are taken from the Bankruptcy Court record. To the extent any fact is disputed, such dispute is noted.

Appellee filed an adversary complaint[2] against Appellant, docketed in 15-ap-387 (the "Adversary Proceeding"), seeking a judicial declaration that the $160,895.00 amount owed by Appellant to Appellee was non-dischargeable, as money loaned under false pretenses, false representations, and/or actual fraud.

During the course of the Adversary Proceeding, Appellee repeatedly sought to schedule Appellant's deposition. Specifically, Appellee first noticed Appellant's deposition for December 23, 2015. For reasons unknown, this deposition was continued to January 13, 2016. A day before the scheduled deposition, Appellant's attorney notified Appellee's attorney that Appellant was ill. On January 13, 2016, Appellant failed to appear at the scheduled deposition on account of an alleged gastrointestinal disease, though he refused to consent to have his doctor confirm his illness. The deposition was rescheduled for January 18, 2016. On that day, Appellant appeared at the deposition, but prior to answering any questions, he indicated he was suffering from an atrial fibrillation and a headache. His attorney contacted emergency services and an ambulance was summoned. The deposition was rescheduled a fourth time for February 1, 2016. Just prior to when the deposition was to commence, Appellant contacted his attorney to notify him that he would not attend the deposition because he was ill and had been vomiting all night. It appears Appellant was finally deposed, but only after the Bankruptcy Judge granted Appellee's motion to compel the deposition.

Thereafter, the Bankruptcy Judge scheduled a trial for December 6, 2016. When the trial commenced, Appellant's counsel informed the Bankruptcy Judge that at 6:30 that morning, Appellant called to inform counsel that he had been vomiting all night, had a fever, and would

---

[2] The adversary complaint is identified as Exhibits 14 and 18 of the Bankruptcy Court record.

2

not be able to attend the trial. (Bankr. R. at Ex. 11).[3] Appellant's counsel sought a continuance of the trial, and Appellee objected. The Bankruptcy Judge granted the request and continued the trial to January 11, 2017, and ordered Appellant to produce a letter from a physician indicating Appellant's medical condition and reason for his absence on December 6, 2016. The Bankruptcy Judge advised Appellant's counsel that Appellant's failure to produce a satisfactory letter from his doctor explaining Appellant's absence by December 9, 2016, would result in a finding in favor of Appellee.

On January 9, 2017, the Bankruptcy Judge issued an Order cancelling the January 11, 2017 trial and granting default judgment in favor of Appellee. (Bankr. R. at Ex. 1). The January 9, 2017 Order stated that:

> This matter previously was scheduled for trial on December 6, 2016, at which time, counsel for [Appellant] appeared and requested a continuance on the basis that [Appellant] was ill and unable to appear to defend his case. As this was not the first time that [Appellant] has failed to participate in matters in his case without any evidence of illness or medical condition being provided, the Court conditioned the continuance upon receipt of a satisfactory report from a medical professional providing a diagnosis that supported the professional's opinion that [Appellant] could not appear in Court on the 6th. Despite two tries, and additional time to produce the requested report, [Appellant] has only provided the Court with (1) discharge papers from a physician's assistant (PA) which bases the diagnosis of flu only upon [Appellant's] report of symptoms which are not substantiated by any of the PAs' findings and provides that [Appellant] should stay home for the day and (2) a copy of that same report with the signature or initials of a doctor on each page. The discharge papers are not satisfactory as the only evidence of illness is [Appellant's] own statement of symptoms experience the previous night (December 5, 2017) for which he did not seek medical treatment until they had gone away. All of his vital signs, except for having high blood pressure, were normal at the examination. Accordingly, the continuance is denied and judgment will be entered for the [Appellee].

---

[3]   Exhibit 11 is a transcript of the December 6, 2016 trial.

(*Id.*). The Bankruptcy Judge entered default judgment in favor of Appellee, ordering that the debt owed by Appellant to Appellee in the amount of $126,435.00 was not dischargeable. (*Id.*).

On January 17, 2017, Appellant filed a motion for reconsideration of the January 9, 2017 Order. On February 15, 2017, the Bankruptcy Judge held a hearing on the motion to reconsider.[4] (Bankr. R. at Ex. 12). According to the transcript of that hearing, the Bankruptcy Judge noted that in her prior Order she had not explicitly considered nor discussed the factors identified in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d. Cir. 1984); and in particular, the factor concerning the extent of Appellant's responsibility for his numerous failures to appear. Consistent with this observation, the Bankruptcy Judge ordered Appellant to provide the Bankruptcy Court with a letter from his personal physician that outlined any and all chronic or other medical conditions he has that would excuse his appearance at the numerous scheduled depositions at which he failed to appear, and his absence from the December 6, 2016 trial. The Bankruptcy Judge noted that if this information was provided by March 10, 2017, she would reconsider the January 9, 2017 Order and proceed with the trial. Appellant did not comply.

On April 25, 2017, the Bankruptcy Judge held a second hearing on the motion for reconsideration.[5] (Bankr. R. at Ex. 13). According to the transcript of that hearing, after discussing the *Poulis* factors, the Bankruptcy Judge found that Appellant had a history of dilatoriness and failures to appear, and that despite being given two opportunities to provide the Bankruptcy Court with a written report from a physician detailing Appellant's medical issues and whether, in the doctor's opinion, these issues caused Appellant's failure to appear at the December 6, 2016 trial, and/or the scheduled depositions, Appellant failed to provide the requested medical proof. In light of this, the Bankruptcy Court stated:

---

[4] Exhibit 12 is a transcript of the February 15, 2017 hearing.
[5] Exhibit 13 is a transcript of the April 25, 2017 hearing.

4

> I was I believe crystal clear on both occasions that I was looking for a document from [Appellant's] regular physician that would advise me that his condition or conditions, and any one of them or some combination of them, could result in his being unable basically to conduct his business.
>
> I have not received that. I haven't even come close to receiving that and I don't know how else to ask for it. I have been provided with volumes of medical records. I'm not a doctor. The Bankruptcy Court is not a medical facility. We can't make a judgment based on receiving medical records.
>
> When I requested and couldn't have been clearer about was that I needed the advice of a medical professional that would indicate to me that I wasn't forced to decide that [Appellant] had taken advantage of the Court and of the parties here and simply did not appear because he was either afraid to or didn't feel that he was up to appearing here.

(*Id.* at 9:14-10:4). The Bankruptcy Judge concluded that Appellant's conduct was in bad faith, and denied his motion for reconsideration. On May 10, 2017, Appellant filed the instant appeal.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 158(a)(1), this Court has appellate jurisdiction over this matter. Where a district court reviews a decision of the bankruptcy court on questions of fact, the court reviews for clear error. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Under the clear error standard of review, the bankruptcy court's findings of fact must stand unless "the court is left with the definite and firm conviction that a mistake has been committed." *Brager v. Blum*, 49 B.R. 626, 629 (E.D. Pa. 1985). However, "the 'clearly erroneous standard' does not apply to questions of law. Thus, where the appellate question presented is solely one of law, no presumption of correctness applies. The bankruptcy judge's legal conclusions may not be approved without [the district court's] independent determination of the legal questions." *In re Gilchrist Co.*, 410 F. Supp. 1070, 1074 (E.D. Pa. 1976) (citations omitted); *see also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-03 (3d Cir. 1981). The bankruptcy

court's conclusions of law are, therefore, subject to plenary review. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Kimmelman v. Port Auth.*, 344 F.3d 311, 316 (3d Cir. 2003).

A bankruptcy court's decision to grant default judgment is, however, reviewed under an abuse of discretion standard. *See Jorden v. Nat'l Guard Bureau*, 877 F.2d 245, 251 (3d Cir. 1989); *In re JRA 222, Inc.*, 365 B.R. 508, 513 (Bankr. E.D. Pa. 2007). "An abuse of discretion arises when 'the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *N.L.R.B. v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) (quoting *Int'l Union v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)). The decision to grant default judgment will not be disturbed on appeal "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Hanover Potato Prod., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993).

**DISCUSSION**

In this appeal, Appellant argues that the Bankruptcy Judge abused her discretion when entering default judgment against him. Specifically, Appellant argues that he provided adequate medical information explaining his absence from trial and the depositions and, therefore, the sanction of dismissal was unwarranted. Appellant also contends that the Bankruptcy Judge committed an error of law in considering the *Poulis* factors, and in denying his motion for reconsideration. On all counts, Appellant is mistaken.

Appellant disputes the Bankruptcy Judge's rejection of the medical documents submitted to justify his repeated absences from the scheduled depositions and trial. Specifically, Appellant compares the Bankruptcy Judge to a schoolteacher that demands a doctor's note to justify an absence, and then doesn't approve of the doctor's note. (*Id.* at 6). This comparison is, however,

a gross mischaracterization of the facts. A better analogy, if one was needed, would be that of a teacher asking for a doctor's note and after repeated chances to provide it, the student instead simply turns over his medical records to the teacher for the teacher to figure out the diagnosis and whether the absence was justified.

Here, the record is undisputed. Appellant missed several re-scheduled depositions as well as the scheduled trial, blaming his absences on unsubstantiated medical issues. He was also given numerous opportunities to provide a "doctor's note" from his treating physician explaining his medical issue(s) and reason(s) for his absences. Rather than doing as ordered, Appellant ignored the Bankruptcy Judge's clear instructions and, instead, provided medical documents that did not address the Bankruptcy Judge's fundamental question: was Appellant justified in missing trial and/or the depositions. Appellant's objection to the Bankruptcy Judge's decision based upon the introduction of medical documentation, without the requested doctor's opinion, is without merit.[6]

Appellant also argues that the Bankruptcy Judge misapplied the *Poulis* factors when denying his motion for reconsideration. This Court disagrees. In *Poulis*, the United States Court of Appeals for the Third Circuit noted that in exercising its appellate function to determine if the trial court abused its discretion in dismissing a case or in refusing to lift a default judgment, it was guided by the balancing of the following factors:

> (1) the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal,

---

[6] Appellant also argues that the amount of the judgment was arbitrary, in that the amended complaint sought $164,895.00 in damages, whereas the Bankruptcy Judge awarded $126,435.00. Notably, Appellee has not appealed this apparent reduction in requested damages but, instead, argues that the Bankruptcy Judge was provided sufficient evidence in the submissions of the cross motions for summary judgment to determine damages. [ECF 5 at 14]. This Court agrees.

which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

*Poulis*, 747 F.2d at 868. Following *Poulis*, district courts have also considered these factors when deciding whether default judgment is appropriate against a defendant who has answered or filed a responsive pleading but then failed to properly participate in the litigation. *E.g., Jimenez v. Rosenbaum-Cunningham, Inc.*, 2010 WL 1303449, at *3 (E.D. Pa. Mar. 31, 2010). "A court can enter default judgment even if it lacks sufficient information to evaluate a factor or if not all factors favor the entry of default judgment." *Williams-Lester v. Vision Fin. Corp.*, 2017 WL 457184, at *2 (E.D. Pa. Feb. 1, 2017); *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 919 (3d Cir. 1992) ("[I]t is not necessary that all of the factors point toward a default before that sanction will be upheld."). Because this Court sits functions as in an appellate capacity in reviewing the Bankruptcy Judge's decision, it considers whether the Bankruptcy Judge properly applied the *Poulis* factors. *See In re McCabe*, 2018 WL 2183837, at *2 (E.D. Pa. May 11, 2018); *In re After Six, Inc.*, 167 B.R. 35, 40 (E.D. Pa. 1994).

At the April 25, 2017 hearing, the Bankruptcy Judge considered each of the *Poulis* factors. First, the Bankruptcy Judge, after noting that Appellant had been given ample opportunity to produce evidence in the form of a doctor's letter to explain his repeated alleged medical absences, but had failed to do so, concluded that the first factor favored the entry of default judgment because it was clearly the Appellant's responsibility to appear and be available for trial. (Bankr. R. at Ex. 13 at 10:5-9). The Bankruptcy Judge then found that that the second *Poulis* factor, prejudice, weighed in favor of entering default judgment because Appellee had been forced to expend additional funds by Appellant's repeated failures to appear at scheduled and, subsequently, rescheduled depositions; and forced to compel the deposition, to prepare for and appear at trial, and to respond to the motion for reconsideration. (*Id.* at 10:10-19). Likewise,

the Bankruptcy Judge concluded that the Appellant had a history of avoiding his obligations to appear, and so the third *Poulis* factor weighed in favor of default judgment. (*Id.* at 10:21-24). The Bankruptcy Judge noted that she lacked evidence to conclude whether Appellant's conduct was willful or not, but assumed that Appellant's actions were in bad faith given the history of his conduct and failure to justify his actions through the production of adequate medical evidence. (*Id.* at 11:4-9). The Bankruptcy Judge appears to have found that the fifth *Poulis* factor weighed in favor of default, citing to *Hoffman v. Palace Entm't*, 621 F. App'x 112 (3d Cir. 2015), which held that "[w]hen a party lacks significant financial means, monetary penalties are not likely to have an impact." *Hoffman*, 621 F. App'x at 115–16. (Bankr. R. at Ex. 13 at 7:13-18).[7] Finally, the Bankruptcy Judge concluded that the sixth *Poulis* factor, the meritoriousness of the claim or defense, was neutral because she was unable to determine which party would prevail since Appellant denied the Bankruptcy Judge and the parties of that opportunity. (*Id.* at 11-10-15). Based on this sound analysis of the *Poulis* factors, the Bankruptcy Judge denied the motion for reconsideration, reaffirming her entry of default judgment against Appellant.

Notwithstanding, Appellant contends that the Bankruptcy Judge misapplied the *Poulis* factors. Specifically, regarding the first factor, Appellant argues that the Bankruptcy Judge should not have required any medical documentation and, further, should not have ignored the medical records produced. [ECF 4 at 10]. Appellant argues that his history of medical issues "could have interfered with his ability to be the perfect party in the litigation setting." (*Id.*). This argument is, however, baseless. Appellant had a clear history of missing depositions by claiming unsubstantiated medical issues, and when he missed the trial for yet another alleged unsubstantiated medical ailment, he was given several opportunities to explain his absences and

---

[7] The Bankruptcy Judge did not specifically state that this factor favored default judgment, and merely quoted the *Hoffman* decision.

9

failed to do so. The validity of Appellant's assertion that his medical problems "could" have interfered with his ability to appear is exactly what the Bankruptcy Judge sought to determine. Appellant's history of asserting a medical infirmity to avoid appearing at his depositions and trial justified the request for proof, and Appellant's failure to provide such proof is more than sufficient to support the Bankruptcy Judge's determination as to the first *Poulis* factor.

Appellant next argues that the prejudice to the Appellee was minimal, and likely resulted in only limited additional funds being expended and inconvenience due to delay. Even if true, "costs expended obtaining court orders to force compliance with discovery" constitute prejudice, and prejudice need not be "irremediable harm that could not be alleviated by [the] court's reopening discovery and postponing trial." *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994). In light of this case law, Appellant's actions caused Appellee to suffer prejudice, as determined by the Bankruptcy Judge.

Appellant argues that depositions are continued all the time, as are trials, and that Appellant's behavior does not constitute a history of dilatoriness. While depositions and even scheduled hearings, arbitrations, and trials may be continued from time to time, Appellant does not cite to any examples where depositions are continually postponed due to the deponent refusing to appear or appearing and then leaving due to alleged medical issues, without providing any proof of an excusable illness. Here, Appellant's conduct and repeated claims of medical issues without providing proof of his alleged medical condition(s) supports the finding of dilatoriness, and the third *Poulis* factor.

Next, Appellant argues that there is no evidence of bad faith, and the Bankruptcy Judge's reliance on his failure to provide sufficient medical documentation was erroneous. [ECF 4 at 10-11]. Appellant is mistaken. Appellant's history of avoiding depositions and trial based on

alleged and unproven medical ailments supports a finding of bad faith. More so, Appellant had multiple opportunities to establish that his absences were not willful or in bad faith, but repeatedly failed to do so. He failed to comply with the Bankruptcy Judge's order requiring an explanation from a treating physician about his medical conditions. Therefore, the Bankruptcy Judge's finding of bad faith, the fourth *Poulis* factor, is well supported.

Appellant's argument that the Bankruptcy Judge erred in concluding that alternative sanctions are insufficient is without merit. In support of this argument, Appellant makes the following assumptions; to *wit*: "[m]aybe [Appellant] came into some money post-petition. Perhaps the [Appellant] found work. Maybe he won a lottery or inherited some money." (*Id.* at 11). Notably Appellant, who is in the best position to know whether he has the means to pay alternative sanctions, does not confirm that he did in fact come into post-petition money or employment, won a lottery, or inherit money. Thus, Appellant has provided no evidence that the Bankruptcy Judge was incorrect in concluding that Appellant, who sought bankruptcy protection in 2014, was able to pay alternative sanctions. Accordingly, Appellant's argument lacks merit.

Finally, Appellant argues that sufficient documents and evidence were submitted to establish that the amended complaint fails to state a claim and, therefore, default judgment is inappropriate. (*Id.* at 11-12). Aside from the bold conclusory statement, Appellant does not argue or present evidence that Appellee's claim is without merit. Furthermore, the Bankruptcy Judge considered Appellant's motion for summary judgment and partially denied it. Thus, the Bankruptcy Court considered the allegations in the amended complaint and the evidence of record and, in partially denying Appellant's motion, concluded that Appellee had a valid issue of material fact that required a trial. Appellant's failure, however, to appear at the scheduled trial

prevented any such determination, resulting in a default. Thus, the Bankruptcy Judge's conclusion that the sixth *Poulis* factor was neutral, is appropriate.

In sum, this Court finds that the Bankruptcy Judge correctly considered the *Poulis* factors and appropriately concluded that five of the *Poulis* factors supported default judgment and one was neutral. Appellant's arguments to the contrary are without merit.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's Orders of January 9, 2017, and April 25, 2017, which entered judgment in favor of Plaintiff/Appellee Keith S. Kimmel, are affirmed.

_____
NITZA I. QUIÑONES ALEJANDRO, USDC J.